**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**DAVID MAYFIELD,**

**Plaintiff,**

**v.** **Case No. 25-CV-659**

**SAMANTHA VAUGHN,**

**Defendant.**

---

**DECISION AND ORDER ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

David Mayfield, who is incarcerated and representing himself, sues Samantha Vaughn, a corrections officer, under 42 U.S.C. § 1983. Mayfield alleges that Vaughn violated his rights under the Fourteenth Amendment by failing to protect him from an attack by another prisoner and by subjecting him to excessive force. Vaughn has moved for summary judgment. (Docket # 20.) For the reasons explained below, Vaughn's motion for summary judgment is granted and the complaint is dismissed.

**PRELIMINARY MATTER**

Vaughn asserts that Mayfield failed to follow Fed. R. Civ. P. 56 and Civil L.R. 56 (E.D. Wis.) when responding to her motion for summary judgment by failing to properly dispute her proposed findings of fact. (Def.'s Reply Br. at 1–4; Docket # 32.) District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While Mayfield's response does not formally conform to the rules, it contains sufficient information for the court to rule on

Vaughn's summary judgment motion. The court notes that Mayfield invokes 28 U.S.C. § 1746 in his complaint, which is enough to convert it into an affidavit for the purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). As such, the court will consider the information contained in Mayfield's submissions where appropriate in deciding Vaughn's motion.

## FACTS

At all times relevant, Mayfield was a pretrial detainee at the Milwaukee County Jail. (Def.'s Proposed Findings of Fact ("DPFOF") ¶¶ 1–2, Docket # 22.) Vaughn was employed by the Milwaukee County Sheriff's Office as a corrections officer at the Jail. (*Id.* ¶ 4.)

On February 8, 2025, Vaughn was working the first shift in housing unit 5D, where Mayfield was housed. (*Id.* ¶ 15.) At approximately 9:58 a.m., the dayroom opened and the prisoners were allowed out of their cells. (*Id.* ¶ 17.) Vaughn was stationed at the officer's desk when she "observed another occupant, Alvester Phillips, becoming loud and disruptive with Mayfield." (*Id.* ¶ 18.) Mayfield and Phillips were verbally arguing. (*Id.*) Vaughn states that she "immediately ordered all occupants in the housing unit to lock into their cells due to this disturbance." (*Id.* ¶ 19.) Phillips got louder, and "a crowd began to form, so Vaughn notified Master Control of the disturbance." (*Id.* ¶ 20.)

As the surveillance video of the incident shows, Mayfield moved closer to Phillips and got in his face. (DPFOF ¶ 21; Declaration of Crystalina Montano ("Montano Decl.") ¶ 12, Ex. 1, Video from Housing Unit 5D ("Video") at 0:07-0:10, Docket # 33-1.) Vaughn again ordered all prisoners to lock into their cells. (DPFOF ¶ 22.) At about the same time, Phillips charged at Mayfield, and the two began physically fighting. (DPFOF ¶ 22; Video at 0:11-0:14.) Vaughn was the only corrections officer on the housing unit, and she notified

Master Control of the fight. (DPFOF ¶ 26.) Because she was the only officer on the unit, she remained behind her desk to wait for additional officers, which, according to safety protocol, was the correct response. (DPFOF ¶¶ 24–25, 27.) At that point, Phillips kicked Mayfield, who was on the ground, and "then Phillips placed Mayfield into a headlock." (*Id.* ¶ 28.) Vaughn ordered Phillips and Mayfield to stop fighting. (*Id.* ¶ 29.) When Phillips and Mayfield did not disengage, Vaughn left her desk, approached them, and pulled out her taser. (DPFOF ¶ 30; Video at 0:53-1:10.) Vaughn warned them that she would tase them if they did not stop. (DPFOF ¶ 30.)

Concerned that Phillips was going to significantly harm Mayfield, she gave a warning that she was about to fire her taser. (*Id.* ¶ 31, 34.) Phillips then let go of Mayfield and began to run away. (DPFOF ¶ 34; Video at 1:10-0:12.) Mayfield then stood up and moved towards Phillips. (DPFOF ¶ 35; Video at 1:12-1:18.) Vaughn ordered Mayfield to stop fighting with Phillips but Mayfield ignored her and as he charged at Phillips, he picked up a chair. (DPFOF ¶ 36; Video at 1:12-1:18.) Phillips then charged back towards Mayfield, causing Mayfield to drop the chair. (DPFOF ¶ 37; Video at 1:19-1:22.) Phillips and Mayfield began to physically fight again, so Vaughn deployed her taser. (DPFOF ¶¶ 37–38; Video at 1:19-1:23.) Prior to deploying her taser, she ordered them to stop fighting several times and warned that she would fire the taser. (DPFOF ¶ 39.)

Once the taser was deployed, Phillips fell onto his back, which ended the fight. (DPFOF 41; Video at 1:22-1:25.) Mayfield stood up, walked over to Phillips, and stood over him. (DPFOF ¶ 42; Video at 1:25-1:30.) At that point, additional corrections officers arrived, securing both Phillips and Mayfield. (DPFOF ¶ 42; Video at 1:30-2:15) Mayfield was escorted out of the housing unit. (DPFOF ¶ 43.) Mayfield was examined by medical

personnel, and he had "one Taser prong stuck in his shirt and a cut on his arm but no Taser prongs were found lodged in his skin." (*Id.* ¶ 50.) Mayfield stated he did not have any additional injuries and refused additional care. (*Id.* ¶ 53.) Vaughn asserts that at no point prior to the fight did Mayfield tell her that he was afraid of being attacked by Phillips or that he was threatened by Phillips. (*Id.* ¶ 56.) Mayfield also never requested to be separated from Phillips prior to the fight. (*Id.* ¶ 57.)

Mayfield generally does not dispute these facts. He asserts that while Phillips was initially behaving verbally aggressive towards him, "Officer Vaughn did nothing." (Pl.'s Resp. at 1, Docket # 31.) According to Mayfield, Vaughn should have made Phillips lock in his cell. (*Id.*) He also notes that he was "not the aggressor at all." (*Id.*) Mayfield states he did not fight back while he was put in a headlock, and he never threw a punch or touched Phillips. (*Id.* at 2.) He further states that Vaughn tased him before tasing Phillips, even though Phillips was the aggressor. (*Id.*)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Mayfield asserts two claims against Vaughn. First, he argues that she failed to protect him during an attack by another inmate in violation of the Fourteenth Amendment. Second, he argues that she used excessive force against him when she tased him to break up the fight, also in violation of the Fourteenth Amendment. I will address each claim in turn.

### *1. Failure to Protect Claim*

"Incarcerated people have a clearly established right to be free from physical harm inflicted by others in the institution." *Kemp v. Fulton Cnty.*, 27 F.4th 491, 494 (7th Cir. 2022). In the case of pretrial detainees such as Mayfield, the right derives from the Due Process Clause of the Fourteenth Amendment, which is governed by an objective standard. *Id.* at 495. As such, to demonstrate a failure to protect, a detainee is not required to prove the

defendant's subjective awareness of a risk of harm. *Id.* at 497. Rather, a detainee must prove only that a reasonable officer under the circumstances would have appreciated the risk of harm to the detainee, and, from there, that the defendant acted in an objectively unreasonable way in addressing that risk. *Davis v. Rook*, 107 F.4th 777, 780 (7th Cir. 2024). Thus, the defendant's personal knowledge does play some role in the objective reasonableness analysis. *Id.* Specifically, "the defendant's knowledge of the *factual circumstances* informs whether a reasonable officer under the same circumstances would have developed subjective or personal awareness of the *risk of harm* to the plaintiff." *Id.* (emphasis in original). The district court "must assess the objective reasonableness of the defendant's action or inaction from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* (internal quotation and citation omitted).

In this case, no reasonable factfinder could conclude that Vaughn acted with objective unreasonableness. It is undisputed that Vaughn had no prior knowledge that a fight may occur that day. Phillips did not specifically threaten Mayfield prior to the fight, nor did Phillips and Mayfield have any prior history of conflict. While Mayfield argues that Vaughn should have acted to prevent the physical fight once Phillips became verbally aggressive towards him, the undisputed evidence shows that Vaughn *did* act—once Phillips and Mayfield started arguing, she ordered all prisoners in the dayroom to lock into their cells. (DPFOF ¶ 19.) She also called Master Control and informed them of the disturbance. (*Id.* ¶ 20.)

To the extent Mayfield contends that Vaughn should have physically intervened to prevent the altercation, the Seventh Circuit has "explained many times over that an officer

may call for back-up before breaking up a fight." *Davis*, 107 F.4th at 782. Vaughn was alone on the housing unit. Waiting for back-up to arrive before intervening to break up a fight is "what any other reasonable officer would do in the circumstances—exhibit 'due regard' for [her] own safety in the first instance." *Id.* (internal citation omitted). As such, it was reasonable for Vaughn to wait for back-up rather than physically intervening herself. It should be noted, however, that once the fight began to seriously escalate, despite being alone on the housing unit, Vaughn *did* attempt to physically break the two men apart by using her taser. Thus, given the facts of this case—that Vaughn had no advanced notice of the threat Phillips posed; that Vaughn was alone on the unit; and that Vaughn did attempt to take some action to prevent further fighting—no reasonable factfinder could conclude that an officer facing the same circumstances as Vaughn acted unreasonably. Summary judgment is granted in favor of Vaughn on this claim.

*2. Excessive Force Claim*

The "Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Under this standard, whether a defendant used excessive force is an objective, not a subjective, determination, and "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97. Whether the force was objectively unreasonable turns on the "facts and circumstances of each particular case." *Id.* at 397. And, as above, a court "must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

In assessing the officer's use of force, "a court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (internal quotations marks and citations omitted). Other considerations to determine whether the force is reasonable include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer, and whether the plaintiff was actively resisting." *Id.*

Mayfield asserts that he was not the aggressor in the altercation with Phillips—he neither threw a punch nor touched Phillips. (Pl.'s Resp. at 1–2.) Mayfield argues that despite Phillips attacking Mayfield, Vaughn tased him before tasing Phillips. (*Id.* at 2.) Mayfield asserts that the tasing caused him to fall; one taser prong stuck in his shirt while the other went into his arm, making him bleed. (*Id.* at 1–2.)

Looking at the evidence in the light most favorable to Mayfield, no reasonable factfinder could conclude that Vaughn's use of the taser amounted to excessive force against Mayfield. The physical fight occurred in a day room full of inmates which posed a safety and security risk. Further, the video shows that the fight was rapidly escalating. At one point, the two men are on the floor fighting, with other inmates trying to stop the fight. Further, even accepting Mayfield's contention that he was not the original aggressor, Mayfield did not try to disengage. Rather, the video shows that when Mayfield and Phillips

were momentarily separated, Mayfield picked up a chair and charged towards Phillips, continuing the fight.

Under these circumstances, no reasonable juror could conclude that Vaughn, who was the lone corrections officer in the day room, acted objectively unreasonably when she used the taser to stop the fight and restore order. Because no reasonable factfinder could conclude that Vaughn was objectively unreasonable in attempting to mitigate the fight in her use of the taser, summary judgment is granted in her favor.

## CONCLUSION

For the foregoing reasons, Vaughn's motion for summary judgment is granted. Vaughn also argues that she is entitled to qualified immunity. Because the Court found in her favor on the merits, however, this argument need not be addressed. As there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Vaughn's motion for summary judgment (Docket # 20) is **GRANTED**.

**IT IS FURTHER ORDERED** that the case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Fed. R. Civ. P. 59(e) or ask for relief from judgment under Fed. R. Civ. P. 60(b). Any motion under Fed. R. Civ. P. 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Fed. R. Civ. P. 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 25th day of November, 2026.

BY THE COURT:

Nancy Joseph

NANCY JOSEPH
United States Magistrate Judge